Good morning, Owners. My name is Perry Clark. I represent Ian Cohen to the plaintiff below, Daewoo Electronics America. I'd like to reserve three minutes of my time, or whatever is left, to address any issues. Today's case raises an unusual application of the principle of res judicata. This is not your normal res judicata situation. Normally, you would have a case filed, resolved, judged, then a second case brought, and the defendant in that case raises their hand and says, well, look, this is res judicata. This was already resolved in this previous case. We don't have that in this case. In the alleged second case in the history of cases, we have litigation where the defendants did not raise the res judicata defense, and there's a reason why. The second case, it's in sort of the airfield of the world, was played into a guarantee of agreement. And their whole argument in that second case was, this guarantee agreement has nothing to do with the debts of GoVideo, the wholly owned subsidiary, that accrued in the earlier case. That was their strategic decision, and that explains why they didn't raise res judicata or the entire controversy doctrine in that second case. So now, going into this third case, the res judicata having not been raised, that defense is waived. That's a waived defense under federal law, right, the rule of eight. Under the eight affirmative defenses, they must be pled. They were not pled. And it's also been waived just because it was not pled in a prior case. Because it was not pled, right, in the guarantee case. Was it with the guarantee case a different kind of case than this case? You're right. It is a different kind of case, right. But, I mean, if you talk about the guarantee case, we're talking about a contractual duty by certain parties to another party if another party defaults. In this case, we're not talking about that at all. In fact, we're talking about I am responsible for the first obligation. I'm not going to guarantee it. I'm responsible myself because I am the alter ego of, or I am the one who got all the stuff, so, therefore, I am it. In the first case, which is the guarantee case, the most I can have is a $5 million obligation because that's all the guarantee was. In this case, I can get to the whole 7.7 because I am the person. It's a different case. You're right. It is a different case. So, I don't understand how, then, it would be res judicata, how they would even suggest that the same kind of defense on the guarantee case would be the defense in this case. Right. You're right. You're right. I mean, I think I should process my arguments by saying under the police view of the world. Well, I'm just trying to say, let's take your view of the world. I mean, in the first case, it was all about the guarantee. That was in New Jersey. You're right. It was. And the New Jersey court said, well, the New Jersey court didn't get a lot of chance to say because everybody started running 40 ways and then the case got done and then there was a judgment given to you. So, the New Jersey court didn't really come out, really get a chance to say all it might have said. But now we're in a new case and it's brought out here and now it's not attacking the guarantee. It's attacking that you are the person. So, unless I would suggest that the entire controversy doctrine applies, it seems to me this case is over. Right. Res judicata would not apply to part of this case, right? I think that's absolutely right and that's my objection. So, then I say to myself, why would the entire controversy doctrine apply here? Because you're asking now for California to, even if I say California now is a New Jersey court, you're asking the California court to say, would New Jersey apply the entire controversy doctrine? And as I read the cases, hell, as everything happens in New Jersey and it's going to affect the New Jersey courts about how long it goes and how many resources it goes, they would not apply the entire controversy doctrine. So, therefore, why should California do it? Right. I think that's absolutely right. And I think the first part of what you said was, but Judge White, the first judge, looked at this as you said it, and he said exactly what you said. I thought Pro White is right. Right. And so, to weigh in then on the entire controversy, again, I think you're also right. I think it can make this more complicated than it needs to be. In this case, if it filed in New Jersey, went to a New Jersey federal court, dismiss this under the entire controversy doctrine. It may well. It may well. It may well, but why would well do that in California? I think that it doesn't change moving it from New Jersey to California. If a New Jersey federal district court would do that, would feel obligated to do that. I think that the federal court in California is not doing that right. But why? What's the difference? Yeah, the difference is, so, if you start, it's in almost every analysis, but if you start with the principal and then sit it with the Supreme Court in September, that court said, you need a federal court sitting in diversity, and that judgment, they apply it through rules, but the state court in which it would apply it, that would be New Jersey. New Jersey has the entire controversy doctrine. So then we look and we say, okay, well what does New Jersey say about its entire controversy doctrine? What does it say about the extraterritorial effect of the entire controversy doctrine? And fortunately, we have the New Jersey Supreme Court ruling in the mortgage link case, addressing that precise question. Is there, does the entire controversy doctrine apply extraterritorially? Must it be applied by courts outside of New Jersey? So here's what we did this morning. It's a very odd decision. And it's not, is there quite a bit of nuance in there? For one thing, you had Joyner Party's rule that was, that has now been abandoned in New Jersey, that was a lot more vigorous in New Jersey than it was in other places. We're not talking about Joyner Party's here, really. We're really talking about Joyner of Plains. And that's far more within sort of traditional race judicata rules. Right, that is, but the entire controversy doctrine has always had the Joyner of Plains aspect to it. Right, right. But what they were concerned about, sort of the extraterritorial effect, they were concerned about the Pennsylvania case, in which you had not joined all the parties. You had made the same claims against the Pennsylvania defendants, and now they were going against the New Jersey defendants. And the question was, well, should we impose this doctrine on a federal district court, say in Pennsylvania, for not having included all of the New Jersey defendants? Right, and the point I'm simply making is that the entire controversy doctrine, you know, then and now, was including slaves. It included Joyner Party's then, but it's always included Joyner of Plains. And the ruling, the Supreme Court was clear in March, they said we do not export our entire controversy doctrine to courts outside of New Jersey. And so how did New Jersey decide to do that? If a federal rule for federal courts is that if you're sitting in diversity, we have to behave as though we were understanding that we still follow our own procedural rules. We have to do this as though we were courts in New Jersey. Then we have to behave as though we're state courts in New Jersey. Yeah, that is correct. But again, the question is here, you know, the key to your question is what effect would a New Jersey court give to a New Jersey judgment outside of New Jersey? In other words, the point is, do New Jersey courts can decide the limits and the territorial limits, extraterritorial limits of their procedural rules? How could they do that? Not as much. New Jersey gets to decide that there's a federal rule outside of New Jersey, but the courts outside of New Jersey don't have to apply the rule. I don't have as much of a philosophical problem with that because I think it does make sense to me to say, well, the courts can, you know, according to California, you can say what courts in California can do. According to New Jersey, you can say what courts in New Jersey do. I don't think it's an actual sort of precedent-setting function of a state Supreme Court to say, this is the rule that should be followed in New Jersey. But if somebody in Wisconsin, as soon as it comes up in New Jersey, don't bother. Right? In other words, this is our rule. This is our rule to manage our documents, our delegates. We're going to have this extremely robust constitutional law. We're going to call it the Entire Controversial Doctrine. And we want to have this for our courts. The problem comes, and this is where I was leading you, the problem comes, it seems to me, that the New Jersey court is the court I'm trying to be. I'm applying New Jersey law in a New Jersey case, even though filed in California. Everything about it has to do with New Jersey. Everything, what law to apply, what we do about it, where we go. Even though the case is filed in California, nobody's arguing we're applying California law or we're putting in law that's outside of New Jersey. Everything goes back to New Jersey. So if, in fact, I'm applying New Jersey, New Jersey, New Jersey every time, then why is the Entire Controversial Doctrine not applicable here? Because New Jersey, New Jersey, New Jersey. I'm acting as if I'm in New Jersey now. And it's as if I'm acting as if I'm outside of New Jersey and whether I have to apply some different concept. I've got New Jersey all the way through. I'm just behaving, doing the same thing New Jersey would do with New Jersey courts. Right. And if that would make it such that the Entire Controversial Doctrine would have been applied. Right. If nobody, if you'd have filed this in New Jersey, there's no question it would have been dismissed. Because you go out and file it in California, the fact that nobody fights that New Jersey law should not apply, nobody fights that we ought not apply these concepts as New Jersey would apply them, then why is it that New Jersey law would not be the end result of the Entire Controversial Doctrine? I'm trying to understand your argument. That's what I was leading up to. That's what I was giving you credit for. But now here I am. I'm a New Jersey judge now. Right. And where I think the focus needs to be is what does, if you're applying New Jersey law, what does New Jersey law say about the application of the Entire Controversial Doctrine? It says, the arbitrator says we're not going to have any more New Jersey courts deal with 40 different cases. They're all going to be in the same case. And now I'm a New Jersey judge. I've been close with New Jersey. You said I could use New Jersey law. I'm a New Jersey judge. Why is the Entire Controversial Doctrine not applicable? Right. And I would also disagree in that the court here in California is not a New Jersey court. It's a federal court sitting in diversity. I understand where it is, but it's got to apply itself as if it is the New Jersey court. Right. And I agree with you. But then the question is, what is the New Jersey law that we are applying? And the New Jersey law that we apply is what the New Jersey Supreme Court said about the extraterritorial effect of the Entire Controversial Doctrine. Are there any facts that were alerted after the New Jersey case was over? After the first case, the default judgment case, or the guarantee? Guarantee. Yeah, there were facts that were alerted from, you know, securities, violence, and these defendants. You know, the one fact that was. . . I'm just trying to figure out if there's some kind of facts or circumstance that couldn't have been thought of or couldn't have been gained or couldn't have been something you would have known or should have known such that you could have brought this case when you brought the other case. The guarantee case. I was in counsel on the guarantee case. I understand. You're on the list. Yeah, right. I'm on the list. You know, I think there were facts that were alert. There was actually another litigation that happened that was brought by another company, MPEG-LA, against these very defendants. And that's really what got the ball rolling. There were new facts alert. I mean, new facts. You started the guarantee case on a certain time. There are facts up to the point of the guarantee case. I couldn't find in this, in any of these, if you will, or any of this record, to suggest there are any facts after that day which make your case better. Well, you know, I guess. . . They're talking about the same facts that you had your guarantee case about. They're not talking about facts after the guarantee case. They're talking about the very facts you had in mind, in hand, could have alleged at the same time. Right. Well, I can tell you that in terms of facts that were available to us, there were facts that were learned after the fact, right? They were facts that have actions done after, or facts that could have been known had you had sufficient discovery. Yeah, I mean, they probably would have been known had you had discovery in the guarantee case, but the guarantee case, you know, it's just put away on a summary judgment. Absolutely. If you had filed this suit literally in New Jersey state court, would the state court say, gee, this was under. . . If this had been filed. . . If the first cases had been filed in New Jersey state courts, no question the entire controversy doctrine would apply, but because it's federal court, we don't care about wasting the resources of federal courts. It's not a concern to us, so it won't apply to the entire controversy. Is that your position? You know, I can't say. . . I can't put myself in that judge's position, but if they had, by their viewpoint, which remember is under mortgage length, if they had applied the entire controversy doctrine, like let's say in the guarantee case we had brought these alter ego claims, and let's say they had raised the entire controversy doctrine in that guarantee case, or let's even say in the guarantee case they say, hey, you know, the entire controversy doctrine says you have to bring in everything in the very first case. You should have brought the guarantee in the default judgment case because that's what the entire controversy says. Everything you can think of is that in the guarantee case or an alter ego case had been dismissed by the New Jersey court under mortgage length. That dismissal would have been without prejudice. And what mortgage length says is that that case could have been brought in another federal court. Because remember what they said in mortgage length. The issue in mortgage length was they had the first Pennsylvania case, they had the second New Jersey case, then they had a third Pennsylvania case, and what happened was the New Jersey case was dismissed in light of the earlier Pennsylvania case, and then that went all the way up to the New Jersey Supreme Court. In the meantime, there was this other Pennsylvania case. The New Jersey Supreme Court said, okay, yeah, this dismissal is fine, but this dismissal should have been without prejudice, so it could be pursued in this other Pennsylvania diversity case. And I realize that's a complicated web to weave, but I think that is the web that the New Jersey Supreme Court, I don't feel like you answered my question, so let me answer the question one more time. So given that we have a prior New Jersey district court case, federal district court case, if you had filed your suit in state court in New Jersey, would the entire controversy doctrine bar the suit? I don't know that it would. I mean, I can see an argument for it being barred, right? I'm just saying it's a specific argument. If the reason that you would argue that it's not a bar is what? In New Jersey? Yeah. Well, I would say if you were arguing to a New Jersey court, and the New Jersey court says, I'm thinking about applying the entire controversy doctrine, your argument to the court is what? And we're saying this is a completely hypothetical case, so it's not in anything that actually happened on here, right? It's not related to the case. So in a situation where, yeah, yeah, I think that is what the entire controversy doctrine says, right? If you're in a state court in New Jersey, right? But a prior judgment was in a federal district court in New Jersey. In the federal, I think, yeah, if you were in a state court in New Jersey, then the entire state court applied the entire controversy doctrine. Yeah, I think a state court, I think that's what, because it's a New Jersey procedural rule, right? So that would be a procedural rule. Do you even know if you're giving effect to a judgment in a federal court? Yeah, I think it's a procedural rule. I'm not sure. I'm actually not sure about that, about if it was a federal, if it was a formerly federal diversity case. I'm not sure. But I will agree with you. If it was a state court, New Jersey state court, to a New Jersey state court. I was not hearing anything. I'm sorry, I can't answer that more directly. But again, I think, you know, as I said, I think mortgage link is, you know, I think what that question presupposes is that the question is, you know, the application of New Jersey law, but I think you need to look at the law that we apply. And the question is, what is the extraterritorial effect of the entire controversy under New Jersey law? Not, you know, what is the entire controversy? I don't know. I think that's a good point. Mr. Garfield, thank you for your time. I vote for you. I'm going to defer for a moment. Mr. Sandell? Good morning, ladies and gentlemen. My name is Lawrence Sandell. I'm with Ethical and Dependent Faculties, and with me is Reese Neinstedt. The posture of this case is plainly laid out by the district court and is rather straightforward. In the 2008 to 2010 New Jersey case, Daewoo sought to have the GoVideo dead and satisfied faculty. And even though Daewoo admittedly pursued other theories of recovery, including the alter ego and successful liability theories, Daewoo elected to only pursue recovery under its guarantee contract theory. It lost, and in this case here, he has sought to drag the affiliates back into court for second by the capital. But the parties have agreed that New Jersey's law of claim preclusion applies here. And Daewoo has not disputed that if New Jersey's entire controversy doctrine applies, this case is precluded. And there is no dispute that all of the affiliates were deemed to be in infinity with the defense in the New Jersey case for the purposes of this appeal. So despite the extensive briefing, the disputes here are actually rather limited. They are, first, whether New Jersey's entire controversy doctrine governs this appeal. Second, if you happen to somehow waive the right to contest Daewoo's purposeful strategy of engaging in piecemeal litigation. And third, if it is determined that res judicata principles govern and not the entire controversy doctrine, whether claim preclusion is still appropriate. Did the district court ever address the entire controversy doctrine? Did this report in your opinion, Judge Weitzman? I'm talking about the district court here, this last opinion. I believe it was referred to. I mean, when I read this last opinion by the district court, it never talks about the entire controversy doctrine. It's talking about res judicata. It's talking about whether res judicata applies, but I don't find the place where it's talking about the entire controversy doctrine. There is a little bit of a murkyness on the law as to whether the entire controversy doctrine is part of the res judicata or if it turns up something in New Jersey law. My recollection is that in parenthetical support of the citations, I think it does refer to the entire controversy doctrine. I'm not 100% sure. I'll look again. I had a tough time with it. A lot of the New Jersey case law does blend the two together. But we ultimately, it's our position that the entire controversy doctrine is part and parcel of New Jersey's regulation law and that it governs here. It does not identify the authority that applies mortgage lien, which is a 1995 case, in the manner that it advocates. It sets no case for a foreign court designed to apply the entire controversy doctrine based on a New Jersey court's final ruling that is on the merits. In most mortgage loan cases, make it abundantly clear that the entire controversy doctrine applies to federal courts, such as this one, where the earlier precluding decision was made by a New Jersey court. In Hoffman v. Nordic Natural in 2015, the New Jersey federal district court stated, quote, contrary to plaintiff's contention that the entire controversy doctrine does not apply to a federal court's interpretation of a prior federal decision, the Third Circuit insists on him that the entire controversy doctrine is applicable in state court actions as well. And this goes back to my question to the district court. It's one of the people on the state hypothetical team. So in Hoffman, you have a federal district court in New Jersey sitting in diversity, deciding that it will, that the matter is barred because something was filed in a New Jersey state court. Now, what about the Flint? What if we had a federal district court? I'm sorry, what if we have a New Jersey state court that has before it a judgment issued by a district court in New Jersey? So the second case would be a New Jersey state court. Second court is filed in a state court. First case filed in a district court. Do you apply the entire controversy doctrine to that? I believe that it would. This is my question to the district court as to whether New Jersey is going to look at that and say we're only here to preserve our own resources. We don't care that the fact that you've spent this time in federal court. I believe that it would, Your Honor. I don't want anyone to talk us through. Does it make a difference if both courts in that issue are federal courts? It does not make a difference. That's what I'm saying. Hoffman was a district court in New Jersey reviewing a judgment by a New Jersey state court. Anything else that you just told us? Pardon me one second. In Hoffman's first case. That's my recollection. That's what you just told us. In Hoffman, the first case was a class action case. It was originally a New Jersey state court. It was then removed to the District of New Jersey. It was removed. It was removed. So that was a diversity action. And the second case was also a class action case filed in a New Jersey state court and removed to the district court. And they found the fact of the entire constitution document to prelude a case. Does Hoffman, when I read Hoffman, it seems to me that if I read Hoffman correctly, even New Jersey law is unclear whether the entire controversy doctrine would apply. So, I mean, Maria, here's what it says. Even after seven courts in our circuit of routine, he applied Fairmont Aviation to reject applying New Jersey's entire controversy doctrine when the first judgment was not rendered by a New Jersey state court. The entire controversy would preclude claims brought in the federal court. And after Hoffman gets Chavez, Chavez, again, declines to resolve the issue. They note that several other courts, and I'm quoting, adopt different policies about intra- and extra-jurisdiction claim preclusion. See also McHale v. Kelly. So, I guess I'm trying to figure out, is it clear what New Jersey would do? Well, Hoffman doesn't seem to be quite as clear about that. Okay. I read because they said 278, no 39. You just say it, but I hear you. I'm just wondering if you focused in on that language. I'm sorry, not in that particular language. But I also will note that before Hoffman, there was another case, Wiggins v. String, which was another case in the District of New Jersey in 2013. Becky sort of went through a similar analysis that I remember saying that Hoffman did. That case, the analysis was a little bit different because the first federal case was a federal question. And because the first federal case was a federal question, they applied federal residue to conduct rather than New Jersey law and the entire controversy doctrine. And so, I mean, if you agree with me that Hoffman did apply the entire controversy doctrine, a second district court case, a second diversity case, following a first diversity case. I don't think Hoffman did that because what it did, it narrowed on the narrow ratio doctrine, which obviated the need to resort to the entire controversy doctrine. If I read Hoffman correctly, they said a lot of stuff about the entire controversy doctrine. But when they got to the decision, they declined to resolve it and instead said, hey, we're going under this narrow ratio to counter doctrine. And they resolved it that way. That's my argument. I believe you're actually right, Your Honor. So I'm only reading their victory when I'm trying to say what they were saying. But because they really didn't do that in their holding. There is one additional case that we discovered in preparation for this hearing. It's not part of the record yet. It is a Second Circuit case. It involved a similar issue. And we discovered this probably in response to Dava's allegation that there's no authority that supports extraterritorial application of the entire controversy doctrine. The case is anonymous. First K, it's in the Second Circuit from 1996. So it's also push-mortgage-like. And we were happy to submit a short statement of supplemental authority if the court would be amenable. What you can do is talk to the court after the proceedings here or you can also provide a copy of the Bill of Duty Interim Pamphlet. It will be provided to us. You'd want to provide one copy to go to us. You can't afford one. But in this case, just as one sense of order for now, the Second Circuit affirmed the New York federal court's entire controversy doctrine dismissal. I'm going to complain. That was dismissed in view of prior New Jersey state action. In terms of the questions to whether race should be caught, just a simple doctrine race should be caught requires dismissal based on which the district court announced its decision. Yes. So we do believe that it does. The first district court decision applied the law in this court, which actually we believe was in error, an issue actually being applied in New Jersey's res judicata to the extent that the entire controversy doctrine is not part of that. And New Jersey's res judicata applies to claims that, quote, grow outwards of the same transaction or occurrence as the claims in the earlier case. And there is no dispute that both this case and the New Jersey case are intended to remedy the same wrong, the non-satisfaction, the convivial debt, and give every opportunity to remedy the single wrong in the New Jersey case and get a conscious decision not to do this. And its counsel actually testified as much below. And in addition to this decision, Just a minute. If we're really going to go to New Jersey laws, you ask us to. We're really talking whether they grow out of the same action. We're talking about three on res judicata, right? Yes, we're talking about New Jersey res judicata, except for some. Oh, then the first, are the acts complained of and the demand for relief the same? Are you referring to? Tell me, are the acts complained of and the demand for relief the same? The New Jersey, if you will, guarantee action versus this action. Are you referring to the three-part New Jersey test? Yes. Well, it's four-part. The three-part is the prior judgment must have been final, the parties to the subsequent action must have been the parties to, and then the last is the claim in the later action was grown out of the same transaction as the claim in the earlier one. And as I understand it, only out of the same is the only thing we're disputing here. So then I went to New Jersey. How do we determine whether they grow out of the same? The first is, are the acts complained of and the demand for relief the same? The second is, are the theories for recovery the same? The third is, are the witnesses and documents necessary for trial the same? And the last is, are the material facts the same? And when I go to those, if you will, that's why I'm trying to get you there, are the acts complained of and the demand for relief the same? In the first action, we're not depending on GoVideo's obligation. We're depending on the defendant's independent contractual obligation or the guarantee. And in this action, we're talking about GoVideo's obligation because now they want $7.75 out of your eye before they can only get $5. I think I need to correct a little bit of a misunderstanding. So GoVideo's involvement was only in the first case and that ended in default. But they're now suggesting you're GoVideo. My alter ego or successor, I believe. So in both suits, the same excuse is actually non-satisfaction of the GoVideo debt. Now, wait a minute. You wouldn't have been liable in the first suit on a guarantee more than the contract of the guarantee. There's nothing. If you could be found liable, it had to go to that contract. That was the only thing that held you liable. In this action, quite a different case, everything GoVideo does becomes your obligation because you are the alter ego. Okay. That's a different cause of action. That's a different act to complain of. You already are correct that the amounts are slightly different than are requested in the first act and the second act, but the bulk is the same debt in the first one. The first one you couldn't have paid the bulk. The best you could have gotten was $5 million. I'm talking the best you could have paid for the entity here. You couldn't have paid the whole GoVideo debt. So the first one was $5 million. The second one was over $7 million. That's 0.75. So that's a nice number of changes in between, but I would argue that there's a common bulk in between the two. And given that they were included out, if you saw that initial amount in the full amount in the first case, which I just got to, that would preclude them. And before I conclude, I'd like to also point out that one of the anomalies, TCL Industries Holdings Limited, was dismissed from this case for lack of personal jurisdiction. And this is in Docket 75 below at pages 147 to 153 of the Supplemental Excerpt's record. And DOE did not contest this round of dismissal in its appeal briefs and has waived any argument on that ground. So in conclusion, I'll please request that this Court affirm the district court's dismissal. Thank you. Mr. Clark, before you come up, the Court will take a brief recess and then we'll come back. Mr. Clark. Thank you, Your Honor. So I'd like to address, and I apologize again, I didn't get the nail on the head with your question, but your question was, if you had a federal district court, issues of diversity, is there any diversity issues? Do you have a state court in New Jersey that's letting you do that kind of thing? Would the entire Controversy Doctrine kick into effect right at the state court? And I think, for the sake of argument, let's say it would. Let's say that under New Jersey law, the entire Controversy Doctrine would apply, that a state court would have to apply New Jersey law to apply the entire Controversy Doctrine. Our position is that in Mortgage Link, the New Jersey Supreme Court said that while it's true, New Jersey state courts have to apply the entire Controversy Doctrine. Courts outside of New Jersey don't. And I think directly, I mean, they said, we do not export our entire Controversy Doctrine to other jurisdictions. We really hope that our notions of procedural fairness do not permit the claims that could have gone elsewhere to be brought in New Jersey. And all we're saying is, we're not in New Jersey. And so while you look to New Jersey law to determine the claim.
judges: Bybee, N.R. Smith, Kobayashi